# CIRCUIT COURT OF FAIRFAX COUNTY

Susan Van Den Broek

v.

Monica Tang,
as Administrator
of the Estate of
Daniel Deely,
and individually

March 5, 2014

Case No. CL-2013-0012884

BY JUDGE RANDY I. BELLOWS

Before the Court is the Plaintiff's Motion for Summary Judgment. On February 21, 2014, the parties presented their arguments, and the Court took the matter under advisement. After considering the oral arguments and briefs of both parties and for the reasons discussed below, the Court grants the Plaintiff's motion and finds that federal law preempts the Defendant's counterclaims.

## Introduction

The purpose of this letter opinion is to address an issue that has not been explicitly resolved by controlling precedent. That issue is whether federal law preempts a breach of contract claim against a properly designated beneficiary of Thrift Savings Plan ("TSP") death benefits under the Federal Employee's Retirement System Act of 1986 ("FERSA") when that beneficiary allegedly waived her rights to the decedent's TSP benefits in a property settlement agreement ("PSA") but, nevertheless, receives the decedent's TSP benefits. Although controlling case law does not specifically address a post-receipt breach of contract case premised on a voluntary waiver of federal TSP death benefits, the cases that deal with similar statutory provisions and similar factual scenarios apply with equal

force in this case and compel this Court to find — on two independent grounds — that the Defendant's counterclaims should be dismissed as preempted by federal law.

## A. Facts and Proceedings

The relevant facts are not in dispute. On June 24, 1991, Daniel Deely designated Plaintiff Susan Van Den Broek, his wife at the time, as the beneficiary of his TSP benefits under FERSA, 5 U.S.C. § 8401 et seq. The beneficiary form executed on this date is the only valid beneficiary form on file with Mr. Deely's employer. On December 4, 1995, the Circuit Court of Fairfax County entered a Final Decree of Divorce in the divorce of Plaintiff and Mr. Deely. The divorce decree affirmed, ratified, and incorporated a PSA entered into by the parties on June 16, 1994. The PSA included the following language, relevant to the issues in this case:

> Paragraph 3(d): *All Other Personal Property*. Except as herein provided to the contrary, each party shall have as his/her sole and separate property all items of personal property, whether tangible or intangible, now titled in the name of or in the possession of each party. Henceforth, each of the parties shall own, have, and enjoy, independently of any claim or right of the other, all items of personal property of every kind, now or hereafter owned or held by him or her, with full power to dispose of the same as fully and effectually, in all respects and for all purposes, as if he or she were unmarried.

> Paragraph 6: *Pension and Retirement Benefits*. Within thirty (30) days of the date of this agreement or as soon thereafter as is reasonably possible, the Husband agrees to execute and submit to the Thrift Savings Plan a Retirement Benefits Court Order, the terms of which shall direct that Ten Thousand Dollars ($10,000.00) from the Husband's Thrift Savings Plan shall be transferred to the Wife's IRA, together with earnings thereon from the date of execution of this Agreement until such funds are actually disbursed to the Wife's IRA. Except as stated above, each party waives any and all claim or right that either may now, or hereafter, have to share in the other's pension or profit sharing or retirement benefits to which he or she may be entitled by reason of the other's past or present employment or any such benefits to which he or she may be entitled by reason of any future employment.

Paragraph 11: *Mutual Releases* . . . . The Wife does hereby forever relinquish and release to the Husband all right, title, and interest which she now has or ever may have in and to the real, personal, and mixed property of the Husband, all right of dower . . . all right, title, and interest which she now has or ever may have in and to the property or estate of the Husband at his death, all right and interest to take against his will or under the intestate laws, and each and every other right, title, and interest she now has or ever may have against the Husband, his heirs, executors, administrators, and assigns, excepting only every right that is given her in and by this Agreement.

On June 28, 2000, following his divorce from Plaintiff, Mr. Deely executed a new designation of beneficiary form for his TSP benefits. The designation named Defendant Monica Tang, Mr. Deely's widow, as his beneficiary. However, the designation was improperly executed because Defendant was both a witness to the form and the named beneficiary and the form specifically states that a witness cannot receive payment as a beneficiary.

Following Mr. Deely's death in February 2013, TSP contacted Plaintiff and advised her that she may be a beneficiary of Mr. Deely's TSP account. The parties agree that Plaintiff is the validly designated beneficiary of the TSP benefits and will receive or has already received Mr. Deely's TSP benefits, valued at $250,000. On May 21, 2013, TSP informed Plaintiff that the claim was on hold because the beneficiary form was being challenged. This communication was followed by a demand letter from Defendant's attorney, asserting that Plaintiff waived all rights to the TSP benefits in the PSA and demanding that Plaintiff execute a written waiver of the funds.

On August 13, 2013, the Plaintiff, Susan Van Den Broek, filed a Complaint for Declaratory Judgment to determine her rights to the TSP benefits. The Complaint asserted that the language in the PSA did not constitute a waiver of the TSP benefits and, regardless, that Plaintiff was still the rightful owner of the TSP benefits because federal law preempted any pre- or post-receipt claim against the benefits. Based on the language in the PSA between Mr. Deely and Plaintiff, cited above, Defendant Tang countersued for breach of contract on September 23, 2013, claiming the Plaintiff had breached the PSA by retaining, or planning to receive and retain, the TSP benefits.

On November 8, 2013, this Court heard Plaintiff's first Demurrer to the Defendant's Counterclaim. On that date, the Court declined to consider Plaintiff's federal preemption defense to the Counterclaim as it determined that issue was not appropriate for resolution in a demurrer. The Court sustained the Plaintiff's Demurrer as to two of the three counts of the counterclaim because Defendant had failed to assert that Plaintiff would receive or had received the TSP benefits. Defendant filed an Amended Counterclaim on November 22, 2013, that corrected this omission. Plaintiff

then filed a Demurrer to the Amended Counterclaim and a Motion for Summary Judgment raising the federal preemption question. The Court consolidated the Demurrer and Motion for Summary Judgment and heard argument on February 21, 2014. On that day, the Court held that the Plaintiff's Demurrer to the Amended Counterclaim was overruled because Defendant had fixed the defects in her Counterclaim and the federal preemption defense was not appropriate for a demurrer. The Court took the Plaintiff's Motion for Summary Judgment under advisement.

B. *Analysis*

Summary judgment is appropriate in a case where there are no material facts genuinely in dispute and the matter concerns a pure question of law. See Va. Sup. Ct. R. 3:20; see also *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5, 82 S.E.2d 588 (1954). This case is ripe for summary judgment because the relevant facts, that Plaintiff is the validly designated beneficiary of the TSP benefits and has, or will, receive those benefits, are not in dispute, and the matter presents a pure question of law, i.e., whether the Defendant's counterclaims based on an alleged waiver in the PSA are preempted by federal law.

This letter opinion finds two independent bases for federal preemption of a post-receipt claim on TSP benefits under FERSA, TSP's statutory order of precedence provision, 5 U.S.C. § 8401, and FERSA's anti-attachment provision, 5 U.S.C. § 8470. However, because there is no binding precedent that discusses these provisions in FERSA, the Court must look to similar provisions in the Federal Employees' Group Life Insurance ("FEGLIA" or "FEGLI"), 5 U.S.C. § 8701 et seq., the Servicemembers' Group Life Insurance Act of 1965 ("SGLIA"), 38 U.S.C. § 1965 et seq., and the accompanying case law. Additionally, the Court also relies upon persuasive authority from federal and state courts. The Court also considers, and distinguishes, statutory provisions of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1001 et seq., and the case law upon which the Defendant principally relies.

1. *Statutory Order of Precedence*

Plaintiff argues that FERSA's statutory order of precedence preempts any pre- or post-receipt claims against Mr. Deely's TSP benefits. As there is no case law precisely on point, similar statutes and the case law related to these statutes provide the Court with guidance.

a. *FERSA's Statutory Order of Precedence and Similar Provisions in FEGLIA and SGLIA.*

The statutory provisions related to FERSA are contained in Chapter 84 of Title 5 of the United States Code. While the TSP provisions are primarily

contained in Subchapter III of Chapter 84, the statutory order of precedence provision is contained in subchapter II at 5 U.S.C. § 8424(d). 5 C.F.R. 1651.1 clarifies that the order of precedence contained in § 8424(d) applies to the payment of TSP death benefits. See 5 C.F.R. 1651.1(b) ("Death benefit means the portion of a deceased participant's account that is payable under FERSA's order of precedence. Order of precedence means the priority of entitlement to a TSP death benefit specified in 5 U.S.C. § 8424(d)."). The order of precedence is as follows:

(d) Lump-sum benefits authorized by subsections (e) through (g) shall be paid to the individual or individuals surviving the employee or Member and alive at the date title to the payment arises in the following order of precedence, and the payment bars recovery by any other individual:

*First, to the beneficiary or beneficiaries designated by the employee or Member in a signed and witnessed writing received in the Office before the death of such employee or Member. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.*

Second, if there is no designated beneficiary, to the widow or widower of the employee or Member.

Third, if none of the above, to the child or children of the employee or Member and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employee or Member or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee or Member.

Sixth, if none of the above, to such other next of kin of the employee or Member as the Office determines to be entitled under the laws of the domicile of the employee or Member at the date of death of the employee or Member.

5 U.S.C. § 8424(d) (emphasis added). As indicated by the italicized portion of the statute above, this provision forms the basis for TSP's decision to pay the TSP funds to Plaintiff upon Mr. Deely's death because Plaintiff was the only validly designated beneficiary at the time of his death.

FEGLIA's order of precedence is contained in 5 U.S.C. § 8705 and states that:

(a) Except as provided in subsection (e), the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

*First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title [5 U.S.C. §§ 8101 et seq.] as provided by section 8706(b) of this title [5 U.S.C. § 8706(b)], in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.*

Second, if there is no designated beneficiary, to the widow or widower of the employee . . . .

5 U.S.C. § 8705(a) (emphasis added).

Finally, SGLIA also has a statutory order of precedence similar to those located in FERSA and FEGLIA. This provision reads as follows:

(a) Any amount of insurance under this subchapter [38 U.S.C. §§ 1965 et seq.] in force on any member or former member on the date of the insured's death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of the insured's death, in the following order of precedence: First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemembers' Group Life Insurance, or (2) in the administrative office established under section 1966(b) of this title [38 U.S.C. § 1966(b)] if separated or released from service, or if assigned to the Retired Reserve, and insured under Servicemembers' Group Life Insurance, or if insured under Veterans' Group Life Insurance; Second, if there be no such beneficiary, to the widow or widower of such member or former member . . . .

38 U.S.C. § 1970(a) (emphasis added).

### b. *Controlling Authority*

Plaintiff argues that the order of precedence in § 8424(d) prohibits a court from considering a pre- or post-receipt suit for the benefits. However, Defendant argues that this order of precedence does not prevent her from bringing a post-receipt breach of contract case based on the alleged waiver in the PSA. Although there is no controlling case law on FERSA's order of precedence or the effect of a voluntary waiver in a PSA, the following cases discuss similar situations in relation to FEGLIA and SGLIA, which, as indicated above, have similar order of precedence provisions.

In *Ridgway v. Ridgway*, the Supreme Court found that the imposition of a constructive trust based on the terms of a PSA was preempted by SGLIA's statutory order of precedence. The Court also found that the Defendant's suit was preempted on another, independent basis in light of SGLIA's anti-attachment provision. This aspect of the case is discussed below in Section B. 454 U.S. 46, 60, 102 S. Ct. 49, 70 L. Ed. 2d 39 (1981). The PSA in *Ridgway* ordered the decedent, a servicemember with a SGLIA policy, to keep his three children as his life insurance beneficiaries following his divorce from the children's mother. *Id.* at 48. However, several months after the divorce, the decedent remarried and changed his SGLIA policy's designation to make his current wife the beneficiary. *Id.* Upon his death, the decedent's former wife sought to enjoin the payment of the proceeds to the decedent's widow. *Id.* at 49. The Supreme Judicial Court of Maine found that it could impose a constructive trust on the proceeds of the SGLIA policy and directed the widow to pay those proceeds to the children. *Id.* at 50.

The Supreme Court reversed the decision of the Maine court, holding that SGLIA clearly indicates that the insured servicemember possesses absolute freedom to designate any beneficiary he chooses and that the imposition of a constructive trust would interfere with the insured's "power to create and change a beneficiary interest in his SGLIA insurance," a power that belongs solely to the insured. *Id.* at 56, 60. The Court found that the case was controlled by *Wissner v. Wissner*, which held that a similar statutory order of precedence in the National Service Life Insurance Act of 1940 ("NSLIA") preempted a California court's decision that the proceeds of the policy were community property and could be distributed in part to the widow, rather than solely to the validly designated beneficiary. 338 U.S. 655, 658-59, 70 S. Ct. 398, 94 L. Ed. 424 (1950). The *Wissner* Court stated that the judgment below "nullifi[ed] the soldier's choice and frustrate[d] the deliberate purpose of Congress" whether it was "directed at the very money received from the Government or an equivalent amount . . . ." *Id.* at 659. The *Ridgway* Court reiterated the importance of the statutory order of precedence in these statutes and the federal interest in the payment of proceeds under federal insurance policies. See *Ridgway*, 454 U.S. at 56 ("Here, as [in *Wissner*], it appropriately may be said: 'Congress has spoken

with force and clarity in directing that the proceeds belong to the named beneficiary and no other'.'").

This Court recognizes that *Ridgway* differs from the case at hand in that it concerns SGLIA, rather than FERSA, and discusses a PSA ordering an insured to keep specified persons on his policy, rather than a PSA that includes a waiver by a specified beneficiary. Despite these differences, the Court finds *Ridgway* applicable to the case at hand because it discusses a nearly identical statutory order of precedence and demonstrates the breadth of Congress' authority in governing the disposition of death benefits. Additionally, the Court considers *Ridgway* instructive on the matter of a post-receipt claim because the case concerned a constructive trust that would be imposed on any benefits received by the beneficiary after distribution by the applicable government agency. Similarly, the Defendant here requests that the Court grant relief that would be applicable after the Plaintiff receives the TSP benefits.

Finally, with regard to *Ridgway*, the Supreme Court drew no distinction between a lawsuit directed at the actual proceeds received from the Government and a lawsuit directed at "an equivalent amount." In essence, the Supreme Court considered this to be a distinction without a difference. Thus, a breach of contract lawsuit, like the counterclaim in the instant case, that seeks to measure damages by the amount of a TSP payment is no different than going after the payment itself. The *Ridgway* Court does suggest in dicta that the decedent's children "may have a claim against the insured's estate for that breach," which this Court interprets to refer to an action for breach of contract. But, this language related to a breach of contract action against the estate of the insured, not against a named beneficiary, which is the factual scenario in this case. The Court finds this distinction to be important in light of the Court's emphasis in *Wissner* and *Ridgway* on the absolute right of an insured to designate a beneficiary and the fact that a beneficiary has no right or ability to change a beneficiary form.

Following *Ridgway*, the Virginia Supreme Court and the Supreme Court of the United States, were confronted with a federal preemption question related to FEGLIA's statutory order of precedence and a state statute that addressed beneficiary designations in insurance policies. *Maretta v. Hillman*, 283 Va. 34, 45, 722 S.E.2d 32 (2012). Of concern were two sections of Va. Code § 20-111.1. Section A:

> revokes a beneficiary designation upon entry of a decree of annulment or divorce from the bond of matrimony and thus alters the order of precedence in 5 U.S.C. § 8705(a), which directs payment of FEGLI benefits first to the designated beneficiary regardless of marital status. As the parties acknowledged before the circuit court, FEGLIA preempts Code § 20-111.1(A). See *Metropolitan Life Ins. Co. v. Bell*, 924 F. Supp. 63, 65 (E.D. Tex. 1995).

*Id.* at 41. In order to address the preemption issue in § 20-111.1(A), the Virginia General Assembly enacted § 20-111.1(D), which "does not alter the direct payment of FEGLI benefits to a designated beneficiary. Instead, it grants a third party the right to recover those benefits from a designated beneficiary who is the former spouse of the insured." *Id.* at 41-42. The facts of this case were as follows. Warren Hillman designated Plaintiff Maretta, his wife at the time, as his FEGLIA beneficiary. 283 Va. at 39. Warren and Maretta divorced, and Warren remarried Defendant Hillman, but he never changed his FEGLIA beneficiary. *Id.* Upon his death, the proceeds were distributed to Maretta, and Hillman filed an action under § 20-111.1(D), asserting that Maretta was liable to her for the death benefits received from FEGLIA. *Id.*

Citing *Ridgway*, the Virginia Supreme Court found that Va. Code § 20-111.1(D) was preempted by the statutory order of precedence found in FEGLIA. *Id.* at 44. The court stated that the statutory order of precedence in FEGLIA demonstrated that it was "[c]ongress' intent that `only [the insured] [has] the power to create and change a beneficiary interest,' that the right to do so cannot be waived or restricted, and that the FEGLI benefits belong to the named beneficiary." *Id.* at 44 (quoting *Ridgway*, 454 U.S. at 60). While the court noted that *Ridgway* concerned SGLIA's, rather than FEGLIA's, order of precedence, the court nonetheless found *Ridgway* "highly persuasive" in light of the "virtually identical language used in FEGLIA and SGLIA." *Id.* at 42, 44. Additionally, the court emphasized that these benefits should not be subject to post-receipt claims under state law and that only the beneficiary has an interest in the policy benefits. *Id.* at 44-45 ("Congress did not intend merely for the named beneficiary in a FEGLI policy to receive the proceeds, only then to have them subject to recovery by a third party under state law.").

The Supreme Court granted certiorari in *Maretta* and affirmed the Virginia Supreme Court's decision. *Hillman v. Maretta*, 133 S. Ct. 1943, 1949, 186 L. Ed. 2d 43 (2013). The Supreme Court specifically addressed the post-receipt nature of Hillman's claim, noting that Section D takes effect only after benefits have been paid to the designated beneficiary. Thus, if administrative convenience was Congress' only purpose in enacting FEGLIA's statutory order of precedence provision, Section D would not be preempted because it operates against the recipient of benefits only after the benefits have been received and FEGLIA's work is complete. *Id.* at 1950. But administrative convenience was not Congress' only purpose. "[I]n FEGLIA, as in the other statutes, Congress `spok[e] with force and clarity in directing that the proceeds belong to the named beneficiary and no other'." *Id.* at 1951-52 (quoting *Ridgway*, 454 U.S. at 55). Consequently, the Court held that Section D interfered with Congress' scheme because it attempted to direct proceeds away from the named beneficiary, the individual to whom those proceeds "belong," by creating a cause of action

after distribution of the benefits. *Id.* The Court held that the post-receipt nature of the cause of action in this case did not distinguish it from pre-receipt causes of action because both "displace[] the beneficiary selected by the insured . . . and place[] someone else in her stead." *Id.* While the Court recognized the potential inequities of this policy, it emphasized that Congress clearly indicated the importance of an insured's freedom of choice and that any state law that interferes with that choice must therefore be preempted. *Id.* at 1952-53.

*Hillman* differs slightly from the case at hand; it concerned a state statute, rather than a waiver in a PSA, and it discussed FEGLIA, rather than FERSA. These are real differences, but they are not material. *Ridgway* and *Wissner* also differed from *Hillman* in that those cases involved different statutes and concerned slightly different factual patterns. *Ridgway* related to a PSA and *Wissner* discussed California's community property laws, while *Hillman* dealt with a Virginia domestic relations statute. Regardless of these differences, the Court still found that *Ridgway* and *Wissner* controlled its decision due to the similarities between the order of precedence provisions. These cases stand for the proposition that this type of statutory order of precedence reflects Congress' determination that an insured have complete freedom to choose his or her beneficiary and that any death benefits belong to that beneficiary alone. Moreover, *Hillman* confirmed that even post-receipt claims against death benefits are preempted by a statutory order of precedence because they too interfere with an insured's freedom of choice. Thus, the Court concludes that these cases apply with equal force to the case at hand because FERSA contains a nearly identical order of precedence as those examined in *Ridgway, Hillman,* and *Wissner.* Additionally, the Court finds that the fact that the Defendant's claim is a breach of contract claim based on a waiver in a PSA does not distinguish this case from the *Ridgway* line of cases because allowing a claim of this nature to go forward would interfere with a TSP account owner's freedom of choice by allowing a third-party claim against a designated beneficiary.

The Defendant relies on *Kennedy v. DuPont,* a case regarding the Employee Retirement Income Security Act of 1974 ("ERISA"), in which the Supreme Court dealt with a common law waiver in a divorce decree. 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009). In that case, the wife disclaimed any interest in her husband's retirement, pension, and benefits plans in a divorce decree, but the husband failed to change his beneficiary form to remove her as beneficiary of certain ERISA benefits. *Id.* at 289. Upon his death, the husband's estate sued the ERISA plan administrator, claiming that ERISA's refusal to treat the divorce decree as a waiver and distribute the funds to the estate amounted to a violation of ERISA. *Id.* at 291.

While the Court in *Kennedy* ultimately concluded that the ERISA plan administrator properly paid out the benefits at issue to the former wife

despite her waiver, the Defendant nonetheless relies on *Kennedy* for several reasons: (1) The Court held that the wife's waiver was not rendered a nullity by the anti-alienation provision of ERISA; (2) the decision lends some support for the notion that a waiver in a divorce decree should be treated as a federal common law waiver and, thus, not be preempted by a federal statute; and (3) the Court explicitly stated that it was not expressing any view as to whether a post-receipt lawsuit would lie to recover benefits after distribution, thus lending some support to the possibility of such a suit. See *id.* at 299, 302-03.

This Court finds, however, that *Kennedy* is readily distinguishable for several reasons. First, unlike FERSA, FEGLIA, and SGLIA, ERISA does not contain a statutory order of precedence. This explains why *Kennedy* does not rely upon *Ridgway, Wissner*, or other cases that discuss statutory order of precedence. The lack of a statutory order of precedence in ERISA is entirely consistent with ERISA's principal purpose to ensure that employers simply act in accordance with the terms of a written plan and stands in contrast to FERSA, FEGLIA, and SGLIA, where there is a statutory order of precedence intended by Congress to achieve the substantive goal of making sure that employees enjoy complete freedom in designating a beneficiary to whom death benefits would *belong*. See *id.* at 301 ("The point is that, by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: `simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules,' *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)."). Second, even if this Court were to find that the waiver in this case was a federal common law waiver and, consequently, not preempted like a state law, the waiver in this case would still be ineffective because it would conflict with the purpose of FERSA's statutory order of precedence. The *Kennedy* Court itself made the point that "[w]hat goes for inconsistent state law goes for a federal common law of waiver that might obscure a plan administrator's duty to act `in accordance with the documents and instruments'." *Id.* at 303 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 259, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) ("The authority of courts to develop a `federal common law' under ERISA. . . is not the authority to revise the text of the statute.")). That applies with equal, if not greater force, to a waiver that is at odds with a statutory order of precedence, as in FERSA. Third, as discussed below, the anti-alienation provision in ERISA differs significantly and materially from the anti-attachment provision in FERSA and SGLIA, and the Court concludes that this provision serves as a separate and independent basis for preemption in this case. Finally, while the *Kennedy* Court left open the possibility of a post-receipt lawsuit, the case

law interpreting the statutes most similar to that at issue here, cases such as *Hillman, Ridgway,* and *Wissner,* stand for the proposition that a lawsuit that has the practical effect of negating the statutory order of precedence, whether it seeks to obtain proceeds pre- or post-receipt, is preempted.

In sum, *Kennedy* does not help the Defendant, first, because it is an ERISA case and not one based on a statute similar to FERSA and, second, because *Kennedy* emphasizes the ineffectiveness of a waiver (even one analyzed under federal common law) that is at odds with the plain language of a plan document. See *id.* at 303-04 ("[T]his case does as well as any other in pointing out the wisdom of protecting the plan documents rule . . . . The plan provided an easy way for [the policy holder] to change the designation, but for whatever reason he did not. The plan provided a way to disclaim an interest in the [ERISA benefits] account, but [the former wife] did not purport to follow it. The plan administrator therefore did exactly what § 1104(a)(1)(D) required: 'the documents control, and those name [the ex-wife].' *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir. 1990).").

### c. *Other Authority*

In addition to the controlling authority discussed above, the Court also considers other authority cited by the parties in their briefs and arguments. The Court finds *Metropolitan Life Ins. Co. v. Thompson; Dohnalik v. Somner;* and *Estate of Hanley v. Andresen,* cases cited by the Plaintiff, persuasive in this matter. See *Thompson,* 968 F. Supp. 312 (S.D. Miss. 1997) (finding for the named beneficiary of a FEGLIA policy despite her waiver of any interest in the decedent's insurance in a prenuptial agreement); see also *Dohnalik,* 467 F. 3d 488 (5th Cir. 2006) (holding that a named beneficiary's right to SGLIA benefits was not revoked through a waiver in a divorce decree because *Ridgway* was "quite clear that a policy holder's explicit designation 'preempts all state law that stand in its way' "); *Hanley,* 39 Wash. App. 377, 693 P.2d 198 (1984) (holding that a named beneficiary was entitled to FEGLIA proceeds despite an absolute waiver in a divorce decree because the decree "conflict[ed] with the statutorily required procedure to change the designation of beneficiary").

These cases are particularly applicable to the instant matter because they discuss instances where the named beneficiary of a FEGLIA or SGLIA policy has voluntarily waived death benefits in a divorce decree. Although these cases do not involve FERSA, this Court concludes that the statutory order of precedence provisions in FEGLIA, SGLIA, and FERSA are so similar as to make such cases applicable to its analysis. While *Thompson* did not specifically address a breach of contract action, the court illustrated the scope of *Ridgway* and the surrounding case law when it determined that a voluntary waiver did not override the beneficiary designation. See *Thompson,* 968 F. Supp. at 314 ("[A]lthough this court is unaware of a case which specifically addresses a beneficiary's purported waiver of

FEGLI benefits through a prenuptial agreement, it is nonetheless clear that no matter what type of contract the insured executes to the contrary, a designated beneficiary prevails against all other claimants.") (citing *O'Neal v. Gonzalez*, 839 F.2d 1437 (11th Cir. 1988) (finding that an "insured's designation of beneficiary under FEGLI prevails for all purposes" despite contractual agreement to do otherwise)). *Dohnalik* reiterated the extent of the *Ridgway* decision by refusing to distinguish a policy holder's waiver as opposed to a beneficiary's waiver. 467 F.3d at 490.

In contrast, the Court was not persuaded by the three cases cited by the Defendant that discuss TSP benefits under FERSA. See *Linder v. Delles*, 885 F. Supp. 2d 557, 561 (N.D. N.Y. 2012) (finding that a third party had a post-receipt claim against statutory beneficiaries of decedent's FERSA policy after the beneficiaries waived interest in the policy); *In re Matter of Estate of Daniel Kelly*, 36 Misc. 3d 736, 950 N.Y.S.2d 415 (2012) (holding that the named beneficiary waived all rights to decedent's TSP benefits in a PSA and ordering her to return the funds to the decedent's estate); and *Smalley v. Smalley*, 399 S.W.3d 631 (Tex. 14th Ct. App., March 28, 2013) (finding that a former wife's waiver of FERSA benefits in a PSA was not preempted by the federal regulations governing TSP and that post-receipt claims against beneficiaries were not barred by federal law).

Although these cases discuss FERSA and voluntary waivers, the Court declines to follow the rationale of the courts in these cases because, first, these cases came before *Hillman*, second, each court fails to address *Ridgway*, and, third, two of the courts base their analysis on ERISA cases, despite the fact that ERISA does not contain a statutory order of precedence like those found in FERSA, FEGLIA, and SGLIA. Finally, the *Smalley* court applied the anti-alienation provision in 5 U.S.C. § 8437(e)(2) to the case, instead of the anti-attachment provision in 5 U.S.C. § 8470, which, as discussed below, is applicable to TSP benefits.

### d. *Discussion*

*Wissner, Ridgway, Hillman*, and related statutory order of precedence cases demonstrate the breadth of federal preemption in the context of federal death benefits. Congress has explicitly mandated through order of precedence provisions that death benefits belong to named beneficiaries and that this order "preempts all state law that stand in its way." *Dohnalik*, 467 F.3d at 491. The application of *Ridgway* in numerous lower court opinions concerning a variety of factual scenarios further illustrates the scope of these provisions.

Furthermore, the fact that this case comes before the Court on a post-receipt breach of contract case does not distinguish it from the *Ridgway* line of cases. If Congress' intention was that death benefits subject to an order of precedence belong to the named beneficiary, that is, the beneficiary

receives and retains the benefits, then whether a claim is pre- or post-receipt should not affect a preemption determination.

Moreover, in deciding the question of federal preemption, it should not make any difference whether the claim is based on a state statute (as in *Hillman*), a court order based on a PSA (as in *Ridgway*), or a PSA that forms the basis of a contract action (as in the instant case). The principle that runs through each of these cases is that a policy holder's intent regarding his beneficiary is determined solely by his beneficiary designation. Courts simply may not rely upon other evidence to determine a policy holder's intent. See *Hillman*, 133 S. Ct. at 1952 ("Rather than draw an inference about an employee's probable intent from a range of sources, Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance should be."). And, if a court were to allow a post-receipt claim on these benefits, rather than accepting that the benefits belong to the named beneficiary and no other, the court would be interfering with the policy holder's wishes as expressed in that beneficiary designation. Congress' mandate is clear, death benefits subject to a statutory order of precedence belong to the named beneficiary and any claim made against those benefits interferes with the policy holder's manifestation of intent as expressed by his designation. See *Ridgway*, 454 U.S. at 63 ("Thus far . . . Congress has insulated the proceeds of SGLIA insurance from attack or seizure by any claimant other than the beneficiary designated by the insured or the one first in line under the statutory order of precedence. That is Congress' choice. It remains effective until legislation providing otherwise is enacted.").

### 2. Anti-Attachment Provisions

In addition to the statutory order of precedence in FERSA, the Court also finds that that FERSA's anti-attachment provision, 5 U.S.C. § 8470, serves as a separate and independent basis for federal preemption of Defendant's claims.

### a. Anti-Attachment Provisions in FERSA and SGLIA, and ERISA's Anti-Alienation Provision

As stated above, the statutory provisions related to FERSA are contained in Chapter 84 of Title 5 of the United States Code. Subchapter VI of FERSA contains an anti-attachment provision that reads as follows:

> (a) An amount payable under subchapter II, IV, or V of this chapter [5 U.S.C. §§ 8410 et seq., 8441 et seq., 8451 et seq.] is not assignable, either in law or equity, except under the provisions of section 8465 or 8467 [5 U.S.C. § 8465 or § 8467], or subject to execution, levy, attachment, garnishment or other

legal process, except as otherwise may be provided by Federal laws.

5 U.S.C. § 8470(a).

While there are exceptions to FERSA's anti-attachment provision, they do not apply to the instance case. The statute contains two exceptions to its application, the provisions of §§ 8465 and 8467. Section 8465 states that an "individual entitled to an annuity payable from the Fund may decline to accept all or any part of the amount of the annuity by a waiver signed and filed with the Office . . . [or] may make allotments or assignments of amounts from the annuity for such purposes as the Office considers appropriate." 5 U.S.C. § 8465. This exception does not apply in the present case because the Plaintiff has not submitted a written waiver to TSP. The second exception, found in § 8467, allows TSP to make payments to "another person if and to the extent expressly provided for in the terms of . . . any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation . . . . " 5 U.S.C. § 8467(a). This exception applies only after TSP receives written notice of the decree, order, or other agreement that documents this exception. 5 U.S.C. § 8467(b). This exception is also inapplicable in this case because the PSA signed by the Plaintiff and Mr. Deely does not expressly provide for the specific person to whom the benefits should be distributed. Furthermore, there is no indication that TSP received written notice of the PSA from Mr. Deely or the Plaintiff.

Like FERSA, SGLIA includes an anti-attachment provision in 38 U.S.C. § 1970, which provides that:

> (g) Any payments due or to become due under Servicemembers' Group Life Insurance or Veterans' Group Life Insurance made to, or on account of, an insured or a beneficiary shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to (1) collection of amounts not deducted from the member's pay or collected from him by the Secretary concerned under section 1969(a) of this title [38 U.S.C. § 1969(a)], (2) levy under subchapter D of chapter 64 of the Internal Revenue Code of 1986 (26 U.S.C. 6331 et seq.) (relating to the seizure of property for collection of taxes), and (3) the taxation of any property purchased in part or wholly out of such payments.

38 U.S.C. § 1970(g).

Finally, ERISA includes an anti-alienation provision which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

### b. *Relevant Authority*

In addition to finding that the statutory order of precedence in SGLIA preempted a pre-receipt claim for benefits, the *Ridgway* Court also found that SGLIA's anti-attachment provision served as a separate and independent basis for preemption. 454 U.S. at 60. Noting the broad sweep of SGLIA's anti-attachment provision, the Court found that this provision was not solely to protect the benefits from creditors; rather, it was intended to "ensure that the benefits actually reach the beneficiary . . . it protects the benefits from legal process `[n]otwithstanding any other law . . . of any State'." *Id.* at 61 (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979)). Although *Ridgway* concerned a pre-receipt suit, it cited authority in which the Court discussed how similar anti-attachment provisions would affect post-receipt claims. See *Wissner*, 338 U.S. at 659 (finding that the lower court judgment that ordered the diversion of future payments after NSLIA paid them to the beneficiary constituted a seizure of those payments under NSLIA's anti-attachment clause); the anti-attachment clause considered by the *Wissner* Court is nearly identical to that found in SGLIA and stated that payments to the named beneficiary "shall be exempt from the claims of creditors and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary . . . . " See *Wissner*, 338 U.S. at 659; see also *Hisquierdo*, 439 U.S. at 583-84 (holding that a court order mandating that the beneficiary relinquish a portion of his benefits upon receipt would run contrary to the anti-attachment provision in the Railroad Retirement Act of 1974). The anti-attachment clause of the Railroad Retirement Act is as follows: "(a) Except as provided in subsection (b) of this section and the Internal Revenue Code of 1954 [26 U.S.C. §§ 1 et seq.], notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated." 45 U.S.C. § 231m(a).

Regarding post-receipt claims, the *Wissner* Court found that, "whether directed at the very money received from the Government or an equivalent amount, the judgment below [ordering the beneficiary to pay the widow a portion of benefits upon receipt of the funds] nullifies the soldier's choice and frustrates the deliberate purpose of Congress." Similarly, the *Hisquierdo* Court held that a post-receipt claim against "an appropriate portion of [the beneficiary's] benefit, or its monetary equivalent" would "run[] contrary to the language and purpose of [the anti-attachment provision] and would

mechanically deprive petitioner of a portion of the benefit Congress, in [the anti-attachment provision], indicated was designed for him alone." *Hisquierdo*, 439 U.S. at 583. Thus, in both cases, the Supreme Court declined to distinguish a pre-receipt claim from a post-receipt claim for the monetary equivalent of the benefits and made clear that either type of claim would be barred by the relevant anti-attachment provision.

The Defendant argues that *Kennedy* controls the Court's decision in this matter because *Kennedy* found that the anti-alienation provision of ERISA would not preempt a common law waiver. *Kennedy*, 555 U.S. at 297. The Court finds this case distinguishable from the instant matter because of the significant differences between ERISA's anti-alienation provision and FERSA's anti-attachment provision. Unlike the anti-attachment provision in FERSA, ERISA's provision merely states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." § 1056(d)(1). The *Kennedy* court specifically defined the words in this provision, "[b]y its terms, the anti-alienation provision, § 1056(d) (1), requires a plan to provide expressly that benefits be neither `assigned' nor `alienated'; the operative verbs having histories of legal meaning: to `assign' is `[t]o transfer; as to assign property, or some interest therein,' *Black's Law Dictionary* 152 (4th rev. ed. 1968), and to `alienate' is `[t] o convey; to transfer the title to property,' *id.*, at 96." Unlike ERISA's provision, the FERSA provision is significantly more expansive; it does not merely discuss assignment and alienation; it prohibits "execution, levy, attachment, garnishment, or other legal process." § 8470(a). Thus, the Court declines to apply *Kennedy* to FERSA's anti-attachment provision and finds that it is not controlling in this case.

Due to the similarities between FERSA's anti-attachment provision and the anti-attachment provisions discussed in *Ridgway, Wissner*, and *Hisquierdo*, the Court finds these cases controlling in this matter. Additionally, the Court concludes that the anti-attachment provision in FERSA applies to the post-receipt claim in this case in light of the Supreme Court's holdings in *Wissner* and *Hisquierdo* regarding post-receipt claims. The Court notes that § 8470(a) does not include the same "before and after" language that was included in the SGLIA and NSLIA provisions, but does not find this variance meaningful. Rather, the Court finds that the inclusion of "before and after" language in FERSA would likely be superfluous because of the provision's strict prohibition on any legal process against the benefits. Furthermore, the anti-attachment provision in *Hisquierdo* did not include "before and after" language, but the Supreme Court nonetheless followed *Wissner* and indicated that the anti-attachment provision would bar a post-receipt claim. Therefore, the Court holds that FERSA's anti-attachment provision serves as a separate and independent basis to bar Defendant's counterclaims in this case.

82

## Conclusion

Defendant's counterclaim asserts that, at the time of divorce, the Plaintiff waived any interest she had in Mr. Deely's TSP death benefits and, further, that Mr. Deely's subsequent designation of the Defendant as the beneficiary of his TSP proceeds, though defective in its execution, is nevertheless a compelling indication of the decedent's desire and intent. Even if absolutely true, however, if federal preemption applies, it must be applied. The Court finds that federal preemption does apply and, as discussed above, applies for two independent reasons. Therefore, the Defendant's counterclaim cannot stand.